UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
TRUSTEES OF THE LOCAL 1034 I.B.T.
INSURANCE TRUST FUND, et al.,

                          Plaintiffs,                    **REPORT AND**
                                                         **RECOMMENDATION**

              - against -                                02 CV 2491 (SLT) (CLP)

GOODMAN BROTHERS STEEL DRUM
CO., INC.,

                          Defendant.
-------------------------------------------------------X

On April 26, 2002, plaintiffs, Trustees of the Local 1034 I.B.T. Insurance Trust Fund (the

"Insurance Fund"), the Local 1034 I.B.T. Pension Trust Fund (the "Pension Fund") and the Local

813 and Local 1034 Severance Trust Fund (the "Severance Fund") (collectively, the "Funds"),

brought this action against defendant Goodman Brothers Steel Drum Company, Incorporated

("Goodman Brothers"), pursuant to Section 301 of the Labor Management Relations Act

("LMRA"), 29 U.S.C. § 185(c), and Section 502 of the Employer Retirement Income Security

Act ("ERISA"), 29 U.S.C. § 1132(e). Plaintiffs seek to recover (1) delinquent contributions due

under the collective bargaining agreements entered into between defendant and plaintiffs, (2)

interest, (3) liquidated damages and (4) attorneys' fees.

Following service of the Summons and Complaint on defendant (Sutton Aff.[1] ¶ 5; id., Ex.

1(B)),[2] defendant failed to file an answer or otherwise move with respect to the Complaint. On

------------------------

[1] Citations to "Sutton Aff." refer to the Affidavit of Richard D. Sutton, Esq., counsel for
plaintiffs, dated March 1, 2004, submitted in support of plaintiffs' motion for default judgment.

[2] Defendant was served on May 22, 2002 by personal service and on May 24, 2002 by
mail. (Sutton Aff. ¶ 5; id., Ex. 1(B)).

August 28, 2002, plaintiffs filed a motion for default judgment, and on October 2, 2002, the district court denied plaintiffs' motion and extended the time for serving the Complaint until October 15, 2002.

Plaintiffs re-served the Summons and Complaint on October 9, 2002 by personal service on Irving Goodman, President of Goodman Brothers, and by service upon the New York Secretary of State. (Sutton Aff. ¶ 8; id., Ex. 1(C)). Again, defendant failed to file an answer or otherwise move with respect to the Complaint, and on November 25, 2002, defendants filed a second motion for default judgment.

On January 26, 2004, the matter was referred to the undersigned to issue a Report and Recommendation as to the motion for default judgment and to recommend damages, if any. On January 28, 2004, this Court issued an Order directing the parties to submit papers in support of their damage calculations.


## FACTUAL BACKGROUND

The Funds are employee pension and welfare benefit plans as defined in Sections 3(3) and 505(d)(1) of ERISA, 29 U.S.C. §§ 1002(37), 1132(d)(1), and are administered at 52-35 Barnett Avenue, Long Island City, New York 11104. (Compl. ¶ 5).[3] Defendant Goodman Brothers is an employer in an industry affecting commerce as defined in Section 301 of the LMRA, 29 U.S.C. § 152(2), (7), and Sections 3 and 515 of ERISA, 29 U.S.C. §§ 1002(5), 1145. (Id. ¶ 6). The defendant's principal place of business is located at 18 Division Place, Brooklyn, New York 11222. (Id.)

---

[3] Citations to "Compl." refer to plaintiffs' Complaint, filed on April 26, 2002.

Defendant has been and is currently a party to a variety of successive Collective

Bargaining Agreements (the "CBAs") with Local 813, I.B.T. and/or Local 1034, I.B.T. (together,

the "Union"). (Compl. ¶ 7). The defendant and the Union entered into two successive CBAs that

cover all "Cooperage Inside Workers;" one agreement covers the period between October 15,

1997 and October 14, 2000 ("Workers CBA I"), and the other agreement covers the period

between October 15, 2000 and October 14, 2003 ("Workers CBA II"). (Id. ¶ 7; id., Exs. A-B).

The defendant and the Union also entered into two successive CBAs that cover all "Cooperage

Chauffeurs;" one agreement covers the period between September 1, 1998 and August 31, 2001

("Chauffeurs CBA I"), and the other agreement covers the period between September 1, 2001

and August 31, 2004 ("Chauffeurs CBA II"). (Id. ¶ 7; id., Exs. C-D).

Pursuant to Workers CBA I and Workers CBA II, the defendant was required to make

weekly contributions to the Insurance Fund in the amount of $84.02 for each employee covered

by the respective CBA. (Spiatto Aff.[4] ¶¶ 5, 9; id., Ex. 1, Art. XXXIII(a); id., Ex. 2, Art.

XXXIII(a)). If a covered employee worked or was paid for less than three days in a week, the

Insurance Fund payments were computed and paid as follows: $37.00 for one day; $42.00 for

two days; and $84.02 for three or more days. (Spiatto Aff. ¶¶ 5, 9; id., Ex. 1, Art. XXXIII(a);

id., Ex. 2, Art. XXXIII(a)).

According to Article XV(a) and (b) of Workers CBA II, the defendant was also required

to contribute $12.00 per week per employee to the Severance Fund. (Spiatto Aff. ¶ 8(a); id., Ex.

2, Art. XV(a)). This provision, which became effective as of January 1, 2001, was to apply to all

---

[4] Citations to "Spiatto Aff." refer to the Affidavit of Michael Spiatto, collection coordinator for the Funds, dated February 26, 2004, submitted in support of plaintiffs' motion for default judgment.

employees who were on the payroll as of October 15, 1997. (Spiatto Aff. ¶ 8(a), (b); id., Ex. 2, Art. XV(a), (b)).

Similarly, pursuant to Chauffeurs CBA I, the defendant was required to make weekly contributions to the Insurance Fund in the amount of $84.02 for each employee covered by the agreement. (Spiatto Aff. ¶ 11; id., Ex. 3 ¶ 22(a)). If a covered employee worked or was paid for less than three days in a week, the Insurance Fund payments were computed and paid as follows: $37.00 for one day; $42.00 for two days; and $84.02 for three or more days. (Spiatto Aff. ¶ 11; id., Ex. 3 ¶ 22(a)).

Pursuant to Chauffeurs CBA II, the required weekly contribution to the Insurance Fund was increased to $104.00 per week for each employee covered by the agreement. (Spiatto Aff. ¶ 15; id., Ex. 4 ¶ 22(a)). Under the Chauffeurs CBA II, if a covered employee worked or was paid for less than three days in a week, the Insurance Fund payments were computed and paid as follows: $37.00 for one day; $42.00 for two days; and $104.00 for three or more days. (Spiatto Aff. ¶ 15; id., Ex. 4 ¶ 22(a)).

Chauffeurs CBA I and Chauffeurs CBA II also contained provisions requiring the defendant to contribute $13.00 per week to the Severance Fund for each employee covered by either agreement who worked or was paid for any part of the week. (Spiatto Aff. ¶¶ 12, 16; id., Exs. 3 ¶ 23(a), 4 ¶ 23(a)). The employer was also required to pay $37.00 per week to the Pension Fund for each employee covered by either agreement. (Spiatto Aff. ¶¶ 13, 17; id., Ex. 3 ¶ 24(a), 4 ¶ 24(a)). Where the employee worked or was paid for less than three days in a week, the payments to the Pension Fund were to be computed and paid as follows: $16.00 for one day; $18.00 for two days; and $37.00 for three or more days. (Spiatto Aff. ¶¶ 13, 17; id., Ex. 3 ¶

24(a), 4 ¶ 24(a)).

If the employer defaulted or failed to make a timely contribution in accordance with the terms of Workers CBA I, Workers CBA II, Chauffeurs CBA I or Chauffeurs CBA II, the employer was also liable for liquidated damages equal to 20% of the delinquent contributions to cover additional bookkeeping or processing expenses required by the Funds. (Spiatto Aff. ¶¶ 7, 10, 14, 18; id., Ex. 1, Art. XXXVI(c); id., Ex. 2, Art. XXXVII(c); id., Ex. 3 ¶ 27(c); id., Ex. 4 ¶ 27(c)).

Plaintiffs allege that from the period of December 1997 until February 26, 2004, the date of Mr. Spiatto's Affidavit, defendant failed to make the required contributions to the Funds despite notice and demands by the Funds. (Spiatto Aff. ¶¶ 19-21). Plaintiffs seek to recover a total of $400,387.82 for delinquent contributions owed to the Funds, plus the 20% liquidated damages penalty, including $128,171.17 owed to the Insurance Fund, $203,477.14 owed to the Pension Fund, and $68,739.51 owed to the Severance Fund.[5] (Spiatto Aff. ¶¶ 21-22; id., Ex. 5). In addition to the outstanding principal owed, plaintiffs also seek interest computed at the statutory rate of 9% per annum, which totaled $222,231.69 as of February 13, 2004, for a grand total of $622,619.51. (Spiatto Aff. ¶ 22).

_____

[5] These balances allegedly owed to the Funds are itemized in detailed computerized sheets attached to Mr. Spiatto's Affidavit. (See Spiatto Aff., Ex. 5).

DISCUSSION

A. <u>Default Judgment</u>

1. <u>Standards</u>

Rule 55(a) of the Federal Rules of Civil Procedure provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). As a threshold issue, Rule 55 sets forth a two-step process which first requires the entry of a default, through a notation on the record that the party has defaulted, and then entry of a default judgment, which is the final action in the case. <u>See</u> <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993). The Clerk of Court automatically enters the default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure by notation of the party's default on the Clerk's record of the case. <u>See</u> <u>id.</u>

After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. <u>See</u> Fed. R. Civ. P. 55(b). Although an application for entry of default should be made before a motion for entry of default judgment, courts will generally excuse a failure to obtain entry of default before the motion for default judgment is made. <u>See, e.g.</u>, <u>Meehan v. Snow</u>, 652 F.2d 274, 276 (2d Cir. 1981); <u>Hirsch v. Innovation Int'l, Inc.</u>, No. 91 CV 4130, 1992 WL 316143, at *1-2 (S.D.N.Y. Oct. 15, 1992) (citations omitted). Here, plaintiffs submitted a request for both entry of default and default judgment on November 25, 2002.

In determining whether a default judgment should enter, courts have cautioned that a default judgment is an extreme remedy that should only be granted as a last resort. <u>See</u> <u>Meehan</u>

6

v. Snow, 652 F.2d at 277. While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored," and doubts should be resolved in favor of the defaulting party. Id. Accordingly, just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993).

The court possesses significant discretion and may consider a number of factors in deciding whether or not to grant a default judgment, including whether the grounds for default are clearly established and what amount of money is potentially involved – the more money involved, the less justification for entering the default judgment. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (citations omitted). Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, §§ 2685, 2688 (3d ed. 1998).

2. Application

Having reviewed the prior proceedings in this case, the Court respectfully recommends

that default judgment be entered. The Complaint clearly sets forth facts establishing a claim that

the defendant violated Section 1145 of ERISA, which states:

> Every employer who is obligated to make contributions to a
> multiemployer plan under the terms of the plan or under the terms
> of a collectively bargained agreement shall, to the extent not
> inconsistent with law, make such contributions in accordance with
> the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Here, plaintiffs have alleged that Goodman Brothers, as an employer, was

obligated under the CBAs to make contributions to the Funds and that Goodman Brothers failed

to comply with its contractual obligations.

Moreover, it is beyond dispute that defendant is in default. The defendant failed to

respond to the Complaint and failed to obtain counsel. See Hirsch v. Innovation International,

Inc., 1992 WL 316143, at *2 (holding that "[the defendant's] default is crystal clear – it does not

even oppose this motion"). A failure to obtain counsel constitutes a failure to defend because

corporations cannot proceed in federal court pro se. See Shapiro, Bernstein & Co. v. Cont'l

Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam); see also Jones v. Niagara Frontier

Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring

corporations, as "artificial" entities, to appear through counsel only). Further, the amount of

money involved in this case is not great, unlike a case in which there are potentially millions of

dollars involved. See Hirsch v. Innovation International, Inc., 1992 WL 316143, at *2 (deciding

that default judgment will not enter because plaintiff's damages request ran well into the millions

of dollars, and giving defendant an opportunity to contest the default judgment).

Here, defendant not only failed to file an answer or otherwise move with respect to the

Complaint but also failed to respond to plaintiffs' motion for entry of a default judgment and to

8

this Court's Order relating to the calculation of damages. Given the numerous opportunities afforded defendant and its apparent lack of interest in participating in these proceedings, there seems to be no compelling reason to delay further.

Accordingly, it is respectfully recommended that plaintiffs' motion for entry of a default judgment be granted.

## B. Damages

### 1. Basis for Default Judgment Damages

Once a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986); 10 James Wm. Moore et al., Moore's Federal Practice ¶ 55.12[1] (3d ed. 2004). The plaintiff must, however, still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Levesque v. Kelly Communications, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)). The burden is on the plaintiff to establish its entitlement to recovery. See Clague v. Bednarski, 105

9

F.R.D. 552 (E.D.N.Y. 1985).

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that:

> [i]f, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper.

Fed. R. Civ. P. 55(b)(2). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Services, Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (citing Transportes Aereos De Angola v. Jet Traders Inv. Corp., 624 F. Supp. 264, 266 (D. Del. 1985)), aff'd, 873 F.2d 38 (2d Cir. 1989). Here, where plaintiffs filed a reasonably detailed affidavit and accompanying exhibits pertaining to the damages incurred and where defendant failed to appear before this Court, the Court can make an informed recommendation regarding damages without an evidentiary hearing.

2. Damages Available Under ERISA

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights under Section 1145, the statute specifies the damages to be awarded when judgment is entered in favor of the plan. See 29 U.S.C. § 1132(g)(2). These include:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
>     (i) interest on the unpaid contributions, or

> (ii) liquidated damages provided for under the plan in an
> amount not in excess of 20 percent (or such higher
> percentage as may be permitted under Federal or State law)
> of the amount determined by the court under subparagraph
> (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid
> by the defendant, and
>
> (E) such other legal or equitable relief as the court deems
> appropriate.

Id.; see, e.g., Iron Workers Dist. Council of Western New York and Vicinity Welfare & Pension

Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1505-07 (2d Cir. 1995). Thus,

not only are plaintiffs who establish a violation of ERISA entitled to an award in the amount of

delinquent contributions owed, 29 U.S.C. § 1132(g)(2)(A), but, in addition, where contributions

remain unpaid at the time of commencement of a suit, plaintiffs are entitled to liquidated

damages equal to the greater of (1) the interest on the unpaid contributions or (2) an amount, as

provided for under the plan, not to exceed 20% of the delinquent contributions. 29 U.S.C. §

1132(g)(2)(C)(i)-(ii). Successful plaintiffs are also entitled to an award of interest accrued

during the periods of delinquency, and reasonable attorney's fees and costs. 29 U.S.C. §

1132(g)(2).

3. Application

a. Delinquent Contributions and Liquidated Damages

In the instant action, plaintiffs are seeking an award of delinquent contributions owed to

the Funds for the period of December 1997 through February 26, 2004, as well as a liquidated

damages penalty in the amount of 20% of the delinquent contributions owed.[6] (Spiatto Aff. ¶ 21). Specifically, plaintiffs seek to recover a total of $400,387.82 for both the delinquent contributions and the 20% liquidated damages penalty, allocated as follows: $128,171.17 is owed to the Insurance Fund, $203,477.14 is owed to the Pension Fund, and $68,739.51 is owed to the Severance Fund. (Spiatto Aff. ¶¶ 21-22; id., Ex. 5).

Based upon the detailed computerized sheets attached to Mr. Spiatto's Affidavit, which indicate the amount of delinquent contributions owed (see Spiatto Aff., Ex. 5), it appears that plaintiffs' request is substantiated. Accordingly, this Court respectfully recommends that plaintiffs be awarded $400,387.82, which represents delinquent contributions owed and the 20% liquidated damages penalty.

b. Interest

Plaintiffs are also entitled to an award of (1) interest accrued during the period of the delinquency; (2) interest accrued from the commencement of the action through the date of judgment; and (3) interest from the date of judgment until the entire amount is paid. 29 U.S.C. § 1132(g)(2)(B). Here, plaintiffs are seeking interest accrued during the period of delinquency, computed at the statutory rate of 9% per annum, for a total of $222,231.69 as of February 13, 2004. (Id. ¶ 22). Since that time, additional interest has continued to accrue at 9% per annum.

Having reviewed Mr. Spiatto's Affidavit, plaintiffs' calculation of interest appears to be

---

[6] In accordance with the terms of Workers CBA I, Workers CBA II, Chauffeurs CBA I and Chauffeurs CBA II, the employer is obligated to pay liquidated damages in the amount of 20% of the delinquent contributions owed if the employer defaults or fails to make a timely contribution. (Spiatto Aff. ¶¶ 7, 10, 14, 18; id., Ex. 1, Art. XXXVI(c); id., Ex. 2, Art. XXXVII(c); id., Ex. 3 ¶ 27(c); id., Ex. 4 ¶ 27(c)).

accurate. Accordingly, this Court respectfully recommends that plaintiffs be awarded interest in the amount of $222,231.69, plus additional interest at the rate of 9% per annum for the period from February 14, 2004 to the date of judgment.

c. Attorneys' Fees

Under ERISA, the Funds are also entitled to an award of reasonable attorneys' fees and costs incurred in connection with this action. 29 U.S.C. § 1132(g)(2)(D). Accordingly, plaintiffs are seeking attorneys' fees in the amount of $6,877.50, which represents services performed by plaintiffs' counsel in connection with plaintiffs' efforts to obtain this judgment. (Sutton Aff. ¶ 13(b); id., Ex. 3). In accordance with N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), plaintiffs' counsel has submitted an affidavit containing contemporaneous billing records which set forth a description of the legal services performed, the amount of time spent performing each of the services, the date on which the services were performed and the name of the attorney who performed those services. (Sutton Aff., Ex. 3). Specifically, the requested fees consist of: (1) one hour billed by Richard Wilsker, a partner, at $440.00 per hour; (2) 16 hours billed by Corina Leske, an associate, at $250.00 per hour; and (3) 19.5 hours billed by Soyini Lovell, a paralegal, at $125.00 per hour. (Id.)

In determining a reasonable rate in an employment discrimination suit brought in this Court, the Second Circuit has held that the prevailing market rate should be that of attorneys practicing in the Eastern District of New York. See Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997). In this case, the rates requested by counsel appear to be slightly higher than billing rates approved in the Eastern District of New York. See, e.g., King v. JCS Enters., 325 F.

Supp. 2d 162, 169-70 (E.D.N.Y. 2004) (holding that reasonable hourly rates for an ERISA case in the Eastern District range from $140.00 for first-year associates to $295.00 for experienced senior partners and $70.00 to 85.00 for law clerks); Rotella v. Bd. of Educ. of the City of New York, No. 01 CV 0434, 2002 WL 59106, at *2 (E.D.N.Y. Jan. 17, 2002) (holding that the prevalent rate in the Eastern District was between $200.00 and $250.00 per hour for partners and $100.00 to $200.00 per hour for junior and senior associates); Fink v. City of New York, 154 F. Supp. 2d 403, 407 (E.D.N.Y. 2001) (finding reasonable rates ranging from $200.00 to $250.00 per hour for partners, $100.00 per hour for junior associates and $200.00 per hour for senior associates);[7] New Leadership Comm. v. Davidson, 23 F. Supp. 2d 301, 303-04 (E.D.N.Y. 1998) (supplementing the Report and Recommendation of the magistrate judge in a labor action and approving rates of $275.00 per hour for the partner, $200.00 for an experienced associate, $150.00 for a less experienced associate and $65.00 for law students). The rates requested here also appear to be slightly higher than the billing rates utilized for fee awards in labor cases in the Southern District of New York. See, e.g., Farkas v. Soft Drink & Brewery Workers Local 812, No. 91 CV 7636, 1996 WL 578100, at *5 (S.D.N.Y. Oct. 7, 1996) (finding reasonable hourly rates ranging from $135.00 to $275.00); Schermerhorn v. Transp. Workers Union of Am. Local 100, No. 93 CV 6686, 1996 WL 79334, at *4 (S.D.N.Y. Feb. 23, 1996) (finding $300.00 per hour reasonable for a partner).

Accordingly, the Court finds that counsels' rates are not within the range of prevailing

---

[7] In Fink, however, the Court held that, due to the complexity of the issues in that particular employment discrimination litigation, fees of $275.00 per hour for partners, $225.00 per hour for senior associates and $150.00 per hour for junior associates were acceptable. Fink v. City of New York, 154 F. Supp. 2d at 409.

rates awarded to attorneys engaged in this type of practice in the Eastern District of New York. The Court respectfully recommends that the rates awarded to plaintiffs' counsel be reduced as follows: $300.00 per hour for Mr. Wilsker; $200.00 per hour for Ms. Leske; and $75.00 per hour for Ms. Lovell.

However, based upon the description of the services rendered by counsel, this Court finds the amount of time requested by plaintiffs' counsel is reasonable and appropriate under the circumstances. Thus, after recalculating the fees at the recommended rates, the Court respectfully recommends that plaintiffs be awarded attorneys' fees in the amount of $4,962.50.[8]

## CONCLUSION

Accordingly, this Court respectfully recommends that plaintiffs be awarded (1) delinquent contributions owed plus a 20% liquidated damages penalty in the amount of $400,387.82; (2) interest in the amount of $222,231.69 plus additional interest at the rate of 9% per annum for the period from February 14, 2004 to the date of judgment; and (3) attorneys' fees in the amount of $4,962.50.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Secretary of Health and Human

---

[8] When calculated using the adjusted rates, the fees are as follows: (1) Mr. Wilsker billed one hour at $300.00 per hour for a total of $300.00; (2) Ms. Leske billed 16 hours at $200.00 per hour for a total of $3,200.00; and (3) Ms. Lovell billed 19.5 hours at $75.00 for a total of $1,462.50.

<u>Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED**.

Dated: Brooklyn, New York
July 27, 2005

Cheryl L. Pollak
United States Magistrate Judge